UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEERLESS INSURANCE CO. and GOLDEN EAGLE INSURANCE CO., <br><br> Plaintiffs, <br><br> v. <br><br> ROBERTA V. BARBANELL, THE ROBERTA V. BARBANELL REVOCABLE TRUST DATED FEBRUARY 26, 1993, R.L. BARBANELL, INC., JEREMY BARBANELL, and PINHAS RAHAV, <br><br> Defendants. | Case No.: 3:24-cv-00759-JES-BLM <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> [ECF No. No. 53] |

Plaintiffs Peerless Insurance Co. ("Peerless") and Golden Eagle Insurance Co. ("Golden Eagle") (collectively, "Plaintiffs") bring the present action against Defendants Roberta V. Barbanell ("RVB"), The Roberta V. Barbanell Revocable Trust Dated February 26, 1993 ("RVB Trust"), R.L. Barbanell, Inc., Jeremy Barbanell ("JB"), and Pinhas Rahav ("Rahav") (collectively "Defendants"). Plaintiffs move for partial summary judgment, seeking a declaration that they do not have a duty to defend Defendants in underlying actions. Oral argument on Plaintiffs' motion was held on February 26, 2025. ECF No. 61.

After considering the parties' materials and arguments, the Court **GRANTS** Plaintiffs' motion.

## I. BACKGROUND

**A.     The Policies**

### 1.     The Peerless Primary Policies

Peerless issued (1) Commercial Farm Liability Policy No. FM 8396844 to first named insureds Ronald L. Barbanell ("RLB") and RVB annually from February 25, 2013 through February 9, 2016, and, (2) the same numbered policy to first named insured RVB doing business as El Rancho de Vida annually from February 10, 2016 through February 25, 2020 (the "Peerless Policies"). ECF No. 59 at 3, ¶¶ 1-2. The Peerless Policies were cancelled, effective February 25, 2020. *See* ECF No. 63 at 4, ¶ 12, Ex. 22.

The Insuring Agreement for "Coverage A Bodily Injury and Property Damage Liability" provides that the Peerless Policies cover "damages because of ... 'property damage.'" ECF No. 59 at 4, ¶ 4. It further provides: "This insurance applies to … 'property damage' only if … [t]he … 'property damage' is caused by an 'occurrence'…" *Id.* ¶ 5. The Peerless Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* ¶ 6.

The Peerless Policies contain an exclusion for "Expected or Intended Injury," which provides that the insurance does not apply to: "'property damage' expected or intended from the standpoint of the insured…" *Id.* at 5, ¶ 10.

### 2.     The Golden Eagle Excess Policies

Golden Eagle issued (1) Excess Liability Policy No. CU 8396944 to first named insureds RLB and RVB annually from February 25, 2013 through February 9, 2016 and (2) the same numbered policy to first named insured RVB doing business as El Rancho de Vida annually from February 10, 2016 through February 25, 2020 (the "Golden Eagle Policies"). *Id.* at 5, ¶¶ 11-12. The Golden Eagle Policies were cancelled, effective February 25, 2020. *See* ECF No. 63 at 4, ¶ 13, Ex. 23.

The Golden Eagle Policies provide limits that are "over scheduled underlying coverages." ECF No. 59 at 6, ¶ 14. The Insuring Agreement provides: "We will pay on behalf of the 'insured', damages in excess of the total amount payable under the terms of any 'underlying insurance'…." *Id.* ¶ 15. The Golden Eagle Polices apply excess of the Peerless Policies and only when the Peerless Policies are exhausted. ECF No. 53-1 at 8. The same terms, conditions, agreements, exclusions and definitions apply to the Golden Eagle Policies as the Peerless Policies. ECF No. 59 at 6, ¶ 16.

The Golden Eagle Policies define an "occurrence" as follows: "an accident resulting in … 'property damage', including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* ¶ 17.

**B.    The Underlying Lawsuits[1]**

**1.    The Lodge Lawsuit**

Raymond E. Lodge ("Lodge"), on February 8, 2023, filed a lawsuit in San Diego County Superior Court (the "Lodge Lawsuit"). ECF No. 59 at 7, ¶ 22. On March 28, 2023, Lodge filed his First Amended Complaint ("Lodge FAC"). *Id.* Lodge asserts the following causes of action: (1) preliminary and permanent injunction; (2) permanent prohibitory injunction; (3) conversion; (4) civil action for breach of California Penal Code § 496(c); (5) negligence; and (6) declaratory relief. *Id.* at 11, ¶ 34.

In his FAC, Lodge alleges that he owns exclusive water rights in Castro Canyon and Middle Springs Canyon in the Palomar Mountain Range, in San Diego County, California. *Id.* at 8, ¶ 23. He alleges that, in two prior lawsuits, RVB expressly waived, relinquished, and quitclaimed to Lodge all water from these locations. *Id.* ¶ 24. Defendants RVB, JB (collectively, "the Barbanells"), and Rahav allegedly conspired to drill illegal wells that

---

[1] Following oral argument on Plaintiffs' motion, Defendants submitted a supplemental declaration in support of their requests for judicial notice, *see* ECF No. 62, and Plaintiffs filed a subsequent declaration, *see* ECF No. 63. The declarations informed the Court that the Policies were cancelled effective February 25, 2020. *See* ECF No. 63 at 4, ¶¶ 12, 13, Exs. 22, 23. Consequently, any allegations of conduct that occurred past the policy period, accidental or otherwise, will be disregarded by the Court.

diverted hundreds of millions of gallons of Lodge's water, damaging his property, including vegetation, trees, and crops. *Id.* ¶ 25.

Lodge alleges that the Barbanells drilled the wells at depths premediated to affect the Castro Canyon Springs. *Id.* ¶ 26. Lodge also alleges that the wells are non-standard and constructed specifically to minimize detection. *Id.* Lodge further alleges the Barbanells made efforts to conceal their illegal activity and took intentional steps to "defraud" Lodge. *Id.* at 9, ¶ 27. Additionally, Lodge alleges the Barbanells and Rahav also conspired to conceal illegal wells located near Middle Springs. *Id.* ¶ 28.

### 2. The Holtz Lawsuit & Lodge Cross-Complaint

On August 14, 2023, Benjamin Holtz ("Holtz") filed a lawsuit in San Diego County Superior Court. *Id.* at 11, ¶ 35. On August 17, 2023, Holtz filed his first amended complaint ("FAC") to include Lodge and Condor's Nest, LLC as "real parties in interest." *Id.* at 11-12, ¶ 35. Holtz asserts the following causes of action: (1) trespass and conversion, (2) trespass and destruction of real and personal property, (3) negligence, (4) civil liability for violation of California Penal Code § 496(c), (5) unfair business practices, and (6) preliminary and permanent injunction. *Id.* at 14-15, ¶ 45.

In his FAC, Holtz alleges that he owns property in the Palomar Mountain Range in northeast San Diego County. *Id.* at 12, ¶ 36. Holtz alleges that he has a perpetual, exclusive right to divert a designated amount of water from the Castro Canyon and Springs, the remainder belonging to Lodge, through his business, Condor's Nest, and none belonging to the Barbanells. *Id.* ¶¶ 37, 38.

Beginning in 2008, Holtz alleges that RVB, her late husband RLB, and JB planted avocado groves, which "notoriously" require a substantial amount of water to maintain. *Id.* ¶ 39. Then, in 2010, Defendants conspired to drill illegal, non-permitted wells into the Castro source. *Id.* ¶ 40. Defendants have continued to illegally operate these wells, resulting in contamination of Holtz's drinking water and harm to his property. *Id.* at 13, ¶ 41.

Holtz alleges that Defendants' conduct was intentional and wrongful, and that Defendants engaged in a "complex scheme to camouflage and conceal their conduct." *Id.* at 14, ¶¶ 43-44.

On September 11, 2023, Lodge filed a Cross-Complaint in the Holtz Lawsuit. *Id.* at 15, ¶ 46. On November 28, 2023, Lodge filed his First Amended Cross-Complaint ("FACC"). *Id.* Lodge asserts claims for financial elder abuse under California's Financial Elder Abuse statue and Negligence. *Id.* at 18, ¶ 55.

## C. The Insurers' Coverage Position

On May 19, 2023, Peerless agreed to defend RVB, RVB Trust, and R.L. Barbanell, Inc. (collectively, the "Insured Defendants") in the Lodge Lawsuit, effective May 5, 2023. *Id.* ¶ 56. Peerless defended the Insured Defendants subject to a full reservation of rights under the Peerless Policies. *Id.* Five months later, on October 30, 2023, Peerless similarly agreed to defend the Insured Defendants in the Holtz Lawsuit, effective August 19, 2023. *Id.* ¶ 57. The following year, on April 15, 2024, Peerless told the Insured Defendants that it would continue to defend them in the Holtz Lawsuit following Lodge filing his FAAC. *Id.* ¶ 58.

Golden Eagle declined coverage for the Underlying Lawsuits because its policies do not apply when another insurer, in this case, Peerless, provides a defense. *Id.* at 19, ¶ 59.

The Insurers declined coverage for the non-insured defendants, RB and Rahav. *Id.* ¶¶ 60-61.

## II. LEGAL STANDARD

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the

1 weighing of the evidence, and the drawing of legitimate inferences from the facts are jury
2 functions, not those of a judge ... ruling on a motion for summary judgment," the "mere
3 existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient ...."
4 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken
5 as a whole could not lead a rational trier of fact to find for the non-moving party, there is
6 no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.
7 574, 587 (1986) (citation and quotation marks omitted).

### III.   DISCUSSION

Plaintiffs move for partial summary judgment that they do not owe Defendants a duty to defend. As explained by the California Supreme Court, "[a]n insurer owes a broad duty to defend against claims that create a potential for indemnity under the insurance policy." *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 287 (2014). "An insurer must defend against a suit even 'where the evidence suggests, but does not conclusively establish, that the loss is covered.'" *Id.* (quoting *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 299 (1993)). "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose*, 6 Cal. 4th at 299-300. The insured party is required to show a "*potential for coverage*," in order to prove a duty to defend exists, while the insurer must conclusively "establish *the absence of any such potential*" in order to negate the duty to defend. *Id.* at 300 (emphasis in original).

"[T]he obligation to defend is not without limits. Rather, such a duty is limited by the nature and kind *of risk covered by the policy*." *Quan v. Truck Ins. Exch.*, 67 Cal. App. 4th 583, 591 (1998) (internal quotation marks and citations omitted) (emphasis in original). The duty to defend must be assessed at the very outset of a case, and its determination depends on a comparison between the allegations of the complaint and the terms of the policy. *Hartford*, 59 Cal. 4th at 287 (citing *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal. 4th 643, 654 (2005)). But an insurer may not limit its coverage analysis to the precise causes of action pled in the third-party complaint. *Id.* When analyzing the alleged facts, an

insurer's duty to defend extends to all possible claims that could be asserted against the insured. *Id.*

The Policies require that the property damage is caused by an "occurrence," which is defined as "an accident." ECF No. 59 at 4, 6, ¶¶ 6, 17. In the context of liability insurance, the California Supreme Court has defined an accident as an "unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." *Delgado v. Interinsurance Exch. of Auto. Club of S. California*, 47 Cal. 4th 302, 308 (2009) (cleaned up) (citation omitted). "Where the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an 'accident' merely because the insured did not intend to cause injury." *Fire Ins. Exch. v. Superior Court*, 181 Cal. App. 4th 388, 392 (2010). "That does not mean, however, that coverage is always precluded merely because the insured acted intentionally and the victim was injured." *State Farm Gen. Ins. Co. v. Frake*, 197 Cal. App. 4th 568, 580 (2011) (internal quotation marks omitted). "Rather, an accident may exist 'when any aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity.'" *Id.* (quoting *Merced Mut. Ins. Co. v. Mendez*, 213 Cal. App. 3d 41, 50 (1989)). "However, 'where damage is the direct and immediate result of an intended … event, there is no accident.'" *Id.*

The Underlying Lawsuits allege that Defendants' acts of drilling illegal wells and stealing water damaged Lodge's and Holtz's crops, properties, and the environment. To establish a potential for coverage, Defendants proffer the Holtz FAC, which alleges "accidental conduct during the operation of the wells causing the negligently excessive extraction of water." ECF No. 56 at 25. Defendants argue that even if the drilling, pumping and extraction activities were intentional, the act of *taking too much water* was an additional, unexpected happening that directly resulted in the harm. *Id.* at 26. In support of this argument, Defendants invoke the example of a driver speeding, which California courts have used to illustrate the term "accident" as follows:

> When a driver intentionally speeds and, as a result, negligently hits another car, the speeding would be an intentional act. However, the act directly responsible for the injury—hitting the other car—was not intended by the driver and was fortuitous. Accordingly, the occurrence resulting in injury would be deemed an accident. On the other hand, where the driver was speeding and deliberately hit the other car, the act directly responsible for the injury—hitting the other car—would be intentional and any resulting injury would be directly caused by the driver's intentional act.

*Merced*, 213 Cal. App. 3d at 50; *see also Delgado*, 47 Cal. 4th at 316. This example, however, offers little support to Defendants. The allegations in the Underlying Lawsuits are clear: Defendants intended to build the wells and intended to extract water from Lodge and Holtz. It is of no moment that Defendants may have extracted water in a negligent manner. "An insured's mistake of fact or law does not transform an intentional act into an accident." *Navigators Specialty Ins. Co. v. Moorefield Constr., Inc.*, 6 Cal. App. 5th 1258, 1277 (2016) (citing *Fire Ins. Exch.*, 181 Cal. App. 4th at 393). Stated differently, negligence about an act's consequences does not turn an otherwise intentional act into an accident. *See Atlantic Cas. Ins. Co. v. Crum*, 364 F. Supp. 3d 1123, 1132-33 (E.D. Cal. 2019) (insured intentionally drilling a well was the "injury-causing event" irrespective of the well's location); *Henstooth Ranch LLC v. Burlington Ins. Co.*, 293 F. Supp. 3d 1067, 1074 (N.D. Cal. 2018), *aff'd,* 770 F. App'x 804 (9th Cir. 2019) (finding no duty to defend where insured's restoration efforts resulted in additional damage because the insured "intended to take up restorative efforts"); *Aquarius Well Drilling, Inc. v. Am. States Ins. Co.*, No. 2:12-CV-00971-MCE, 2012 WL 6048993, at *7 (E.D. Cal. Dec. 5, 2012), *aff'd,* 593 F. App'x 720 (9th Cir. 2015) (finding no duty to defend well testing company because, even if the company's testing had consequences that the insured did not intend, it "could not have engaged in the well testing by 'accident'"). There is nothing in the Underlying Lawsuits, and Defendants have not presented any evidence, that "an aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity." *Frake*, 197 Cal. App. 4th at 580. Rather, because the damage is alleged to be "the direct and immediate result of an intended ... event, there is no accident." *Id.*

Accordingly, because Defendants have not, and cannot, establish the absence of any potential for coverage, summary judgment is granted to Plaintiffs as to Plaintiffs' duty to defend Defendants in the Underlying Lawsuits. As the duty to defend issue is dispositive of Plaintiffs' motion, the Court declines to address the parties' remaining arguments.[2]

## IV.   CONCLUSION

For the reasons stated herein, the Court **GRANTS** summary judgment in favor of Plaintiffs. The Court finds that Plaintiffs have no duty to defend Defendants in the Underlying Lawsuits, and that Peerless is entitled to withdraw from its defense.

**IT IS SO ORDERED**.

Dated:  August 26, 2025

_____
Honorable James E. Simmons Jr.
United States District Judge

---

[2] As a separate matter, Defendants urge the Court to find a duty to defend because of a prior arbitration Lodge filed against RVB, which Peerless agreed to defend. ECF No. 59 at 27, ¶ 95. Defendants argue that the allegations in Underlying Lawsuits are similar to the ones asserted in the prior arbitration, and therefore, demonstrate an admission of coverage. *See* ECF No. 56 at 23. However, as noted by Plaintiffs, unlike the Underlying Lawsuits, the prior arbitration alleged a breach of contract claim and did not allege the intentional theft of water. *Id.* Consequently, the Court finds that Peerless's coverage in the prior arbitration does not provide evidence of an admission of coverage in the present case.